## HEAD et al. v. CITY OF GAINESVILLE.*
(No. 2749.)

(Court of Civil Appeals of Texas. Texarkana.
May 16, 1923. Rehearing Denied
June 21, 1923.)

**1. Judgment ⬥101(1)—Petition not stating cause of action does not sustain default judgment even against sureties.**

A petition stating no cause of action will not support a default judgment, even though defendants are liable as sureties, in view of Vernon's Ann. Civ. St. Supp. 1918, art. 1827, prescribing the requisites of a petition.

**2. Indemnity ⬥9(1)—Liability of indemnitor and his surety held not involved in violation of independent paving contract within meaning of indemnity agreement.**

Under an indemnity contract to protect a city against loss from dispute, discrepancy, or other contingency affecting the amount of work done or materials furnished under a paving contract with a construction company if it affected the city's warrants issued in payment and indorsed by the company to the indemnitor, neither the indemnitor nor his surety is liable for breach by the construction company of its paving contract not affecting the warrants.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Action by the City of Gainesville against H. W. Head, the Southern Surety Company, and another. From a judgment for plaintiff, the named defendants appeal. Reversed and remanded.

The suit was by appellee as plaintiff against the Southern Construction Company, a partnership, the Southern Surety Company, a corporation, and H. W. Head as defendants. The judgment was by default. It was in appellee's favor against the construction company, the surety company, and Head for $15,000, and against the construction company alone for the further sum of $5,375. The motion of the construction company, the surety company, and Head to set aside the judgment having been overruled by the court below, the surety company and Head prosecuted this appeal.

It appears from allegations in appellee's petition and from instruments attached thereto and made parts thereof that in November, 1919, appellee advertised for bids "for furnishing all material and labor for the construction of approximately 31,000 square yards of street paving and 10,000 lineal feet curb and gutter." The construction company was a bidder, and its proposal "to do all the work and furnish all the material" for prices it specified per square yard, lineal foot, etc., "as provided by the attached plans and specifications," was accepted by appellee. Thereupon appellee and the construction company entered into a contract as follows:

"This agreement made and entered into this the 20th day of November, 1919, by and between the city of Gainesville, Cooke county, Tex., party of the first part, hereinafter called the city, and the Southern Construction Company of Dallas, Tex., party of the second part, hereinafter called the contractor, witnesseth: That for and in consideration of the payments and agreements hereinafter mentioned, to be made and performed by the said party of the first part, and under the penalty expressed in a bond bearing even date with these presents and hereto annexed, the said party of the second part agrees with the said party of the first part to commence and complete the construction of certain street improvements and all extra work in connection therewith as stated in the general specifications, and at his own proper cost and expense to furnish all tools, materials, machinery, labor, supervision and other accessories necessary for the said construction in accordance with the conditions and prices stated in the proposal attached hereto, and in accordance with the plans and specifications therefor as signed by the parties hereto, all of which are made a part hereof, and all in the manner and under the conditions hereinafter specified. All the provisions of this agreement shall be performed in the city of Gainesville, Tex., and any suit to enforce its provisions or for damages for breach thereof shall be brought in Cooke County, Texas. In witness whereof," etc.

It will be noted that by the terms of the contract the construction company was to furnish the material, etc., and do the work "in accordance with the plans and specifications therefor" made a part of the contract, and "all in the manner and under the conditions hereinafter specified." It will also be noted that no "manner" nor "conditions" were specified. Neither the "general specifications," nor the other "plans and specifications," nor the bond, referred to in the contract, were set out in the petition or made parts thereof by exhibits. What they were is not shown by anything in the record. By a "supplemental contract," also made on November 20, 1919, the parties agreed that the construction company should be paid the amount which should become due it under the original contract, in interest-bearing warrants of the city in sums aggregating $50,000 and maturing from year to year for 20 years, instead of in money.

September 10, 1920, appellant Head wrote appellee's city council a letter as follows:

"Gentlemen: By virtue of an order from the Southern Construction Co. any moneys due said Southern Cons. Co. from the city of Gainesville for work done and materials furnished under a contract for street improvements is to be paid to me, said amounts being payable in city warrants.

"I understand it is now the purpose and intent of the city council of Gainesville, Texas, to have issued to said Southern Cons. Co. $10,000 in warrants, these warrants to be properly in-

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and indexes
*Writ of error dismissed for want of jurisdiction October 24, 1923.

dorsed by Southern Cons. Co. and delivered to me.

"In the event of any dispute, discrepancy or other contingency arising which might in any way affect the amount of work done or materials furnished by Southern Cons. Co., so as to in any way affect said $10,000 in warrants, I hereby agree to protect and indemnify said city of Gainesville, Texas, up to the sum of $10,000.

"None of said money will be paid or credited to Southern Cons. Co. except in such amounts as may be shown to be due under signature of mayor of Gainesville, Texas, and when such amount shall equal $10,000 then this obligation to be discharged.

"In case of suit arising out of any matters set out herein or in case suit becomes necessary to enforce any rights secured hereby, such suit shall be filed in Cooke county, Tex."

September 20, 1920, the surety company, acting by its attorney in fact, Sam Kirbpatriel, executed and delivered to appellee an instrument as follows:

"Know all men by these presents, that the Southern Surety Company of Des Moines, Iowa, is held and firmly bound unto the city of Gainesville, Tex., in the sum of $15,000, for the payment of which sum said Southern Surety Company hereby binds itself, its successors and assigns.

"The condition of the foregoing obligation is such that whereas on the 10th day of September, 1920, H. W. Head of Grayson county, Tex., agreed with the city of Gainesville, Tex., to protect said city of Gainesville, Tex., in event of any dispute, discrepancy or other contingency which might arise in the delivering of certain warrants to said H. W. Head, original of said agreement being attached hereto and made a part of this bond.

"Now, therefore, if said H. W. Head shall protect and indemnify said city of Gainesville, as per terms of said agreement, then this obligation will become void; otherwise to remain in full force and effect."

On the same day, to wit, September 20, 1920, said surety company, acting by its attorney in fact, John T. Suggs, made and delivered to appellee another bond in the same words and figures as the one above set out, except that it was in the sum of $50,000 instead of $15,000.

October 4, 1920, Head wrote appellee's city council a letter in the same words and figures as the one he wrote them September 10, 1920, hereinbefore set out, except that the amount of bonds the city intended to issue to the construction company was stated to be $37,000, instead of $10,000, and he was to idemnify the city in the sum of $50,000, instead of $10,000.

In addition to alleging the execution of the instruments hereinbefore set out, and those mentioned but not set out, appellee alleged that "by the terms and provisions" of its contract with the construction company "it was to issue and did issue" to said construction company warrants amounting to $50,000 "for the work and paving (quoting) to be done by

it under the said contract, which said bonds (warrants) were issued to the said Southern Construction Company in payment for said work and paving before the same was actually done and completed"; that the warrants it issued to the construction company were indorsed by said construction company and delivered to Head; that the construction company "has not completed paving work under said contract to exceed the sum of $35,000," and failed and refused "to proceed (quoting) with the paving work outlined and provided by the plaintiff for it to do under the provisions of its contract to the extent of the sum of $15,000 of warrants issued to it by plaintiff"; that the construction company, because of its failure to complete the paving work, had become liable to appellee for said sum of $15,000; that "by the terms and provisions of said agreement (quoting) by said Head and the said surety company they and each of them became liable and bound to protect plaintiff from any loss that might be sustained by it by the issuance of its said warrants payable to the order of the said construction company in the sum of $50,000, it being agreed and understood that when said warrants were so issued in said amount that they would be made payable to the order of said construction company and by it indorsed and delivered to the said Head"; that by reason of the undertaking of Head he, upon the default of the construction company, became liable and bound to pay appellee said sum of $15,000; that he refused to do so; and that the surety company by reason of the bonds it executed "has become and is liable and bound to pay" appellee said $15,000, and refused to do so.

Head, Dillard, Smith, Maxey & Head, of Sherman, for appellants.

W. L. Blanton and W. S. Moore, both of Gainesville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] We doubt if appellee in its petition stated a cause of action, arising on the contract set out above, against the construction company. Of course, if it did not, the judgment should be reversed so far as it was against appellants, even if they were liable as sureties for a failure of the construction company to perform its obligation under said contract. Article 1827, Vernon's Ann. Civ. Statutes 1918 Supp.; American Bonding & Trust Co. v. Garrett, 61 Tex. Civ. App. 454, 129 S. W. 298; Texas Auto & Supply Co. v. Magnolia Petroleum Co. (Tex. Civ. App.) 191 S. W. 573; Ricks v. Pinson, 21 Tex. 507. The undertaking of the construction company was "to commence and complete (quoting) the construction of certain street improvements and all extra work in connection therewith as stated in general specifications," furnishing the material, tools, etc., necessary therefor, "in accordance with plans and specifications" agreed upon, "in the manner and under the

conditions (quoting) hereinafter specified." The allegations as to the breach by the construction company of its undertaking were that appellee had issued $50,000 in warrants to it (the construction company), and that it (the construction company) "had not completed paving work under said contract to exceed the sum of $35,000," and had "refused to proceed with the paving work outlined and provided by plaintiff (quoting) for it to do under the provisions of its contract to the extent of $15,000 of warrants issued to it by plaintiff." There was no allegation that the warrants, or any of them, had been paid, nor any reason stated why, if appellee had not paid them, it was bound to do so; nor were there any allegations showing that appellee had in any way been injured by the failure of the construction company to complete the work it undertook to do.

[2] But if it should be conceded that a cause of action was stated against the construction company, we think the judgment so far as it was against appellants was nevertheless unauthorized, because it did not appear from the allegations in the petition that they were liable for the consequences to appellee of a breach by the construction company of its contract, nor did it appear from said allegations that they, or either of them, had defaulted in the performance of any obligation or duty they owed to appellee. What Head agreed to do and what the surety company by its bonds bound itself he would do was "to protect and indemnify" appellee against loss "in the event of any dispute, discrepancy or other contingency arising which might in any way affect the amount of work done or materials furnished" by the construction company, "so as to in any way affect" the warrants issued by appellee to the construction company and by it (the construction company) indorsed and delivered to him. That Head was a mere trustee of the parties for the purpose of holding possession of the warrants until he was directed by appellee's mayor to deliver them to the construction company is plain, we think. It was not alleged that he did not have the warrants in his possession, or was not holding them as agreed upon, or that he had in any way violated the trust. If he was holding them as agreed upon, certainly appellee had no right to maintain this suit against him. And, of course, if it could not maintain it against him, it could not maintain it against the surety company as his surety.

The judgment is reversed, and the cause is remanded to the court below for such proceedings as may be proper there.

On Motion of Appellee for a Rehearing.

The construction company did not appeal from the recovery appellee obtained against it, and it was not the intention of this court to disturb the judgment of the court below in that respect. That it was not so stated, directly, in the opinion disposing of the appeal, was due to an oversight of the writer.

If this court erred, as appellee insists it did, in holding that it appeared that Head was a mere trustee for the purpose of holding possession of the warrants, the conclusion reached that a cause of action was not stated against him nor against the surety company was nevertheless correct, we think, because it did not appear from the allegations in the petition that a "dispute, discrepancy or other contingency" arose which in any way affected the warrants turned over to Head. If Head held the warrants, and it was not alleged he did not hold them, and if he had not "paid to or credited" any of same to the construction company "except in such amounts" as were shown "by estimates duly allowed and signed by the mayor," and it was not alleged that he had, he had not breached his undertaking, and a cause of action against either him or the surety company did not exist.

The motion is overruled.